UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE KELLOGG COMPANY,

        Plaintiff/Counter-Defendant,

                              File No.  1:04-CV-598

v.

                              HON. ROBERT HOLMES BELL

JATINDER P. SABHLOK,

        Defendant/Counter-Claimant.

                                    /

**O P I N I O N**

This declaratory judgment action is before the Court on the parties' cross-motions for summary judgment.

**I.**

Jatinder P. Sabhlok ("Sabhlok") has threatened to sue his former employer, The Kellogg Company ("Kellogg"), for breach of contract and for age discrimination in violation of the Elliot-Larsen Civil Rights Act. Kellogg filed this action seeking a declaration that Sabhlok's claims are barred by a release agreement. Sabhlok has filed a counterclaim seeking a declaration that his claims are not barred because he did not release any claims related to his employment arising after November 13, 2001. The parties have filed cross-motions for summary judgment. For purposes of these motions, the Court will accept as true the facts alleged in Sabhlok's proposed breach of contract and age discrimination complaint.

Kellogg is a Delaware Corporation with its principal place of business in Battle Creek, Michigan. (Compl. ¶ 2). Sabhlok was hired by Kellogg in 1997 at age 51. (Compl. ¶ 5). In July 2001, Sabhlok was Kellogg's Vice President of the International Research and Development Group. (Compl. ¶ 6). In July 2001 Sabhlok was informed that his position would be eliminated at the end of September 2001 as part of a corporate restructuring. (Compl. ¶ 7). Between July and September 2001 Sabhlok participated in meetings to implement the reduction in force. (Compl. ¶ 8). During those meetings Sabhlok was asked to remain at Kellogg for a period of one year to further the decentralization of research and development and to assist in establishing research and development laboratories across Asia and Australia. To induce Sabhlok to remain at Kellogg during this one-year retention period, Sabhlok's supervisor assured him, both before and after the reduction in force plans were finalized, that a permanent position would be made available to him. (Compl. ¶ 9). In reliance on this continuing promise, Sabhlok accepted the one-year assignment. (Compl. ¶ 10). Sabhlok turned 55 years old in September 2001.

For the next year Sabhlok spent nearly seventy percent of his working time traveling in Australia and Asia to assist in setting up research and development laboratories in those regions. (Compl. ¶ 13). During that year Sabhlok became aware of various employment opportunities within Kellogg. Notwithstanding Sabhlok's requests for employment, Kellogg did not offer him the available employment opportunities for which he was qualified. (Compl. ¶ 14). Instead, Kellogg offered the positions to younger employees. (Compl. ¶¶ 22,

2

24, 28, 31, 35, 46). Sabhlok was advised that Kellogg was "bringing up the younger people." (Compl. ¶ 28). Sabhlok's last day of work for Kellogg was on September 30, 2002. (Compl. ¶¶ 50-51).

Sabhlok alleges in his proposed complaint that Kellogg breached an oral agreement to offer Plaintiff a permanent position, (Compl. ¶ 57), and that Kellogg terminated him and failed to rehire him based on its unlawful consideration of his age in violation of the Elliot-Larsen Civil Rights Act. (Compl. ¶¶ 68-71).

At the end of September 2001 Kellogg offered the employees whose positions were terminated by the restructuring and reduction in force two severance package options, the Standard Severance Package and an Enhanced Severance Package. The Enhanced Severance Package offered more benefits than the Standard Severance Package. Those who elected the Enhanced Severance Package were required to sign a Separation Agreement and Release of Claims Form. Sabhlok elected the Enhanced Severance Package. On November 13, 2001, Sabhlok signed the Separation Agreement and Release of Claims ("Agreement"). The Agreement contains a broadly worded release.

On October 31, 2002, after the conclusion of the one-year retention period, Sabhlok signed an Amendment of Separation Agreement and Release of Claims ("Amendment") providing for Sabhlok's receipt of an additional 6 weeks of severance and a pro-rated bonus for performance year 2002, in exchange for Sabhlok's acceptance of a two year non-compete clause. Amendment ¶¶ 1 & 2.

3

In 2004, Sabhlok, through his counsel, advised Kellogg of his intention to file an action against Kellogg for breach of a promise of continued employment and for age discrimination. Kellogg filed this action seeking a declaration that Sabhlok's claims are barred by the release agreement. Sabhlok has filed a counter-claim seeking a declaration that his claims are not barred because they arise from his post-September 20, 2001, employment with Kellogg. This matter is before the Court on the parties' cross-motions for summary judgment.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require

4

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### III.

The scope of a release is controlled by the language of the release. *Adair v. State*, 470 Mich. 105, 127, 680 N.W.2d 386, 399 (2004) (citing *Batshon v. Mar-Que Gen. Contractors, Inc.*, 463 Mich. 646, 650, 624 N.W.2d 903 (2001)). If the language of the release is unambiguous, it must be construed as written. *Id.* "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Cole v. Ladbroke Racing Michigan, Inc.*, 241 Mich. App. 1, 13, 614 N.W.2d 169, 176 (2000) (citing *Rinke v. Automotive Moulding Co.*, 226 Mich. App. 432, 435, 573 N.W.2d 344 (1997)). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Id.* at 14 (citing *Gortney v. Norfolk & Western R. Co.*, 216 Mich. App. 535, 540, 549 N.W.2d 612 (1996)). "When a release is challenged, the party seeking to avoid the release must prove by a preponderance of the evidence that the release should be set aside." *Binard v. Carrington*, 163 Mich. App. 599, 603, 414 N.W.2d 900, 902 (1987).

The first count in Sabhlok's proposed complaint alleges that Kellogg breached an oral agreement to offer Plaintiff a permanent position. (Compl. ¶ 57). Sabhlok contends that this claim is not barred by the release because it arises from his employment after he signed the release. He contends that he worked for an additional year for Kellogg in exchange for a promise of future employment that was made both before his position was eliminated and

many times during his additional year of employment. Sabhlok contends that promises related to his employment after the reduction in force are separate and distinct from the subject matter of the Separation Agreement.

Sabhlok's claim that Kellogg breached an oral agreement is barred by the Agreement and the Amendment. The Agreement includes a broad release and waiver of "any and all claims . . . arising from or relating in any way to my employment." Agreement ¶ D.[1] The

---

[1] Paragraph D of the Agreement includes the following provisions:

> I irrevocably and unconditionally release, waive, and forever discharge the Company . . . from any and all claims . . . I have or may claim to have arising from or relating in any way to my employment or separation of employment. This includes, but is not limited to, all claims under the Age Discrimination in Employment Act of 1967 . . . .

Agreement ¶ D(1).

> To the fullest extent permitted by law, Employee . . . agrees that he/she shall not lodge, assist nor participate in any formal or informal charge or complaint in any court . . . arising out of or related to Employee's Claims or Employee's employment by or performance of service to or on behalf of Kellogg or any of the other Releases or the termination of that employment or other services, or for any other reason. . . .

Agreement ¶ D(2).

> Employee agrees and understands that execution of this Separation Agreement and Release of Claims Form by Employee operates as a complete bar and defense against any and all of Employee's Claims against Kellogg . . . .

Agreement ¶ D(3).

> I agree and acknowledge that the above-described consideration (additional severance pay and benefits) is in full and complete settlement of any and all claims, demands, and causes of action I have or may have.

Agreement ¶ D(4).

Agreement acknowledges that "the Company is not obligated to offer employment to me now or in the future." Agreement ¶ N.[2] The Agreement further provides that it is the entire agreement and the only promises made are contained within the document. Agreement ¶ S.[3] Thus, the Agreement clearly bars any oral promises made before the one year retention period and before Sabhlok signed the Agreement.

Although the Agreement states that it "does not waive any claims that I may have that arise after the effective date of the Separation Agreement and Release of Claims Form," Agreement ¶ H,[4] this language must be read in conjunction with the Amendment signed by

---

[2]Paragraph N provides in pertinent part:

> I understand that I may apply for employment as a new employee, but acknowledge that the Company is not obligated to offer employment to me now or in the future.

Agreement ¶ N.

[3]Paragraph S provides in pertinent part:

> I acknowledge and agree that this is the entire agreement and the only promises made to me to sign this Separation Agreement and Release of Claims Form are those contained within this document.

Agreement ¶ S.

[4]Paragraph H provides in pertinent part:

> This Separation Agreement and Release of Claims Form does not waive any claims that I may have that arise after the effective date of the Separation Agreement and Release of Claims Form.

Agreement ¶ H.

Sabhlok at the conclusion of the one year retention period. The Amendment provides that it and the original Agreement constitute the "entire agreement" between Sabhlok and Kellogg, that together they supersede any other written or oral agreements relating to Sabhlok's employment or termination, and that all other terms of the agreement remain unchanged and in full force and effect. Amendment ¶ 4.[5]  A merger clause such as this "serves to integrate the agreement and makes the agreement a final written expression of the parties." *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990). This language clearly bars any claims of an oral contract for rehire that might have accrued during the one year retention period.

The second count of Sabhlok's proposed complaint alleges that Kellogg terminated him and failed to rehire him based on its unlawful consideration of his age in violation of the Elliot-Larsen Civil Rights Act. (Compl. ¶¶ 68-71). The Agreement's broad release and waiver of "any and all claims . . . arising from or relating in any way to my employment" specifically recites that the release and waiver includes any claims under the age

---

[5]Paragraph 4 of the Amendment provides in pertinent part:

> Employee agrees that this Amendment and original Separation Agreement dated November 15, 2001 constitute the entire agreement between Employee and Kellogg and that his Amendment and the original Separation Agreement supersede any and all prior and/or contemporaneous written and/or oral agreements relating to Employee's employment with the Company and termination therefrom. All other terms of the original Separation Agreement and Release of Claims Form remain unchanged and in full force and effect.

Amendment ¶ 4.

Discrimination in Employment Act of 1967, the Older Workers Benefits Protection Act, and any claims under the Michigan Elliot-Larsen Civil Rights Act.  Agreement ¶ D.  The Agreement also recites that Sabhlok was advised to seek legal counsel to understand its full force and effect and that Sabhlok entered the agreement knowingly, voluntarily, and without coercion.  Agreement ¶¶ B & C.  Sabhlok clearly waived and released any right he might have had to claim that he was terminated in 2001 based on an unlawful consideration of his age in violation of the Elliot-Larsen Civil Rights Act.  He also has no termination claims relating to the termination of his employment at the conclusion of the retention period because he has acknowledged that it was understood that the retention period was only for a one-year period.

However, Count II of Sabhlok's proposed complaint contains not only a termination claim, but also a failure to rehire claim.  Sabhlok contends that his failure to rehire claim arises out of his post-September 2001 employment, and that because he specifically preserved any claims he might have that "arise after the effective date" of the Agreement, Agreement ¶ H, he never released his right to bring a claim for failure to rehire based on age.

Kellogg contends that Sabhlok's agreement that the Company was not obligated to offer employment to him now or in the future, Agreement ¶ N,[6] was an effective release of any age discrimination claim for failure to rehire.  In support of this position Kellogg cites *Blakeney v. Lomas Info. Sys., Inc.*, 65 F.3d 482 (5th Cir. 1995).  In *Blakeney* former

---

[6]*See* footnote 2.

9

employees who had signed a release when they were discharged during a reduction in force sued the company alleging that they were victims of age discrimination when the company failed to rehire them. The Fifth Circuit rejected their rehire argument:

> According to the employees, because they cannot prospectively waive age discrimination claims, summary judgment was improper on the rehiring claim. This argument, however, is unpersuasive because the rehiring claim is not a future claim. In the release, the employees waived all rights to suit arising out of their termination. The employees' cause of action for failure to rehire is simply an attempt to revive claims they were paid to release. Any claim concerning failure to rehire certainly arises out of their termination and was extant when the release was ratified.

*Id.* at 485.

On the other hand, the Eleventh Circuit held that a release waiving an employee's right to sue on any then-existing claims did not waive his right to sue for the employer's "subsequent post-termination conduct." *Smith v. BellSouth Telecommunications, Inc.,* 273 F.3d 1303, 1311 n. 7 (11th Cir. 2001). In *Smith* the employee signed a general release when he resigned from his employment. He later reapplied for employment and was not rehired. Although he had signed a release, he was allowed to pursue a claim that the company's failure to rehire was in retaliation for his previous exercise of rights under the Family Medical Leave Act. *Id.*

This Court does not believe that *Blakeney* and *Smith* are necessarily contradictory. Neither case should be understood as articulating a broad rule as to whether a general release of claims will or will not bar a subsequent failure to rehire claim. Instead, the cases are best understood as being limited to their facts. *See Gustafson, Inc. v. Bunch*, 1999 WL 304560,

*3 (N.D. Tex. 1999) ("*Blakeney* involved a reduction in force, and the facts do not indicate whether plaintiffs reapplied for the same or different positions. The court is confident, however, that *Blakeney* should not be read broadly and indiscriminately to make every subsequent employment application a 'rehire.'"). Under some facts a general release will bar a subsequent failure to rehire claim and under other facts it will not. It depends on how closely related the rehire is to the original termination in terms of time and subject matter. Where, as here, the employee gave up his right to sue for age discrimination in his termination and acknowledged that the employer had no obligation to rehire him, his claim of age discrimination in the failure to rehire arose out of his termination and cannot be the basis for a separate claim. After releasing an age discrimination claim, the employee cannot resurrect the age discrimination claim by reapplying for employment. *See Burnam v. Amoco Container Co.*, 755 F.2d 893, 894-95 (11th Cir. 1985) (*per curiam*) (holding that a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act because otherwise a potential plaintiff could always circumvent the limitations by reapplying for employment).

Sabhlok's failure to rehire claim arose during the one-year retention period. His failure to rehire claim did not arise independently after his termination but was instead inextricably linked to the claims of wrongful discharge that he expressly waived at the time

of his termination. Accordingly this claim falls within the scope of the claims released in the Agreement.

This conclusion is also supported by the Amendment signed by Sabhlok at the conclusion of the retention period. The Amendment provides that "[a]ll other terms of the original Separation Agreement and Release of Claims form remain unchanged and in full force and effect." Amendment ¶ 4. This would include the provision that Kellogg was not obligated to offer Sabhlok employment "now or in the future." Agreement ¶ N. Finally, the Court is required to construe contracts consistent with common sense and in a manner that avoids absurd results. *Parrish v. Paul Revere Life Ins. Co.*, 103 Mich. App. 95, 97, 302 N.W.2d 332, 333 (1981). In this case common sense dictates that Kellogg would not have offered additional benefits to Sabhlok at the conclusion of the retention period if it was not satisfied that Sabhlok had waived his right to sue Kellogg for age discrimination claims arising out of Kellogg's failure to rehire Sabhlok during the retention period.

For all these reasons the Court will grant Kellogg's motion for summary judgment and will enter a declaration that Sabhlok's proposed claims against Kellogg for breach of contract and violation of the Elliot-Larsen Civil Rights Act are barred by Sabhlok's release of claims in the Agreement and Amendment. For the same reasons the Court will deny Sabhlok's cross-motion for summary judgment.

**IV.**

Kellogg has requested an award of fees and costs reasonably incurred in pursuing its motion for declaratory judgment pursuant to ¶ D(7) of the Agreement. Paragraph D(7) provides that if Sabhlok breaches any part of the Agreement, he will "be liable for all expenses, including costs and reasonable attorney's fees incurred by any entity released in defending the lawsuit or claim, regardless of the outcome." Agreement ¶ D(7).

In paragraph D(2) Sabhlok agreed that he would not file a complaint in any court or agency. Agreement ¶ D(2). Because Sabhlok did not file his proposed complaint in any court or agency and because this action for declaratory relief was initiated by Kellogg rather than by Sabhlok, this Court does not find any breach of the agreement that would give rise to attorney fees under ¶ D(7).

An order and declaratory judgment consistent with this opinion will be entered.


Date:   September 21, 2005            /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE